**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**MELISSA STONE,**

      **Plaintiff,**

**vs.**                          **Case No. 1:13cv52-MCR/CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's applications for disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI of the Act. After careful consideration of the entire Record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On September 16, 2009, Plaintiff, Melissa Stone, filed applications requesting benefits for a period of disability and DIB and SSI alleging disability beginning November 28, 2008.   R. 56, 164-65, 179.   (Citations to the Record shall be by the symbol R. followed by a page number that appears in bold and in the lower right corner.)   Plaintiff's last date of insured status for disability and DIB benefits is September 30, 2012.   R. 56, 179.

Plaintiff's claim was denied initially on February 24, 2010, and on reconsideration on July 30, 2010.   R. 49-52, 56, 73-82, 84-87.   On August 18, 2010, Plaintiff requested a hearing.   R. 56.   On October 5, 2011, a video hearing was held and Plaintiff appeared in Jacksonville, Florida, and Administrative Law Judge (ALJ) David S. Pang, appeared in Baltimore, Maryland.   R. 17-47, 56.   Plaintiff was represented by Georgia J. Joiner and Douglas A. Hinshaw of G.K. Joiner & Associates, Inc., non-attorney representatives.   R. 17, 19, 56, 88-91, 230.   Plaintiff testified.   R. 20-42, 56.   Leah P. Salyers, an impartial vocational expert, testified.   R. 42-46, 56, 154-56 (Resume).

On October 21, 2011, the ALJ entered his decision concluding that Plaintiff is not disabled.   R. 56-67.   On November 15, 2011, Plaintiff, by and through Albert Bacharach, Jr., an attorney, sought review of the ALJ's decision with the Appeals Council.   R. 15-16. On February 5, 2013, the Appeals Council denied Plaintiff's request for review, but noted that it had considered the evidence provided by Plaintiff's counsel, including records from Shands Health Care dated November 6, 2000, and February 22, 2006, (Exhibit 31F), and other evidence.   R. 1-6, 797-830.

On March 6, 2013, Plaintiff filed a Complaint and seeks judicial review of the

decision.    Doc. 1.    Both parties filed memoranda of law, which have been considered.

Docs. 22 and 23.    After careful consideration of the entire record, it is recommended that

the decision of the Commissioner be affirmed.

## II.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).    "Substantial

evidence is more than a scintilla, but less than a preponderance.    It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).    "The Commissioner's factual

findings are conclusive if supported by substantial evidence."    Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four

_____

[1]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."    Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).    "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.    A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."    Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).    "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"    Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement).[2] Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v):

_____

[2] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise. The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.   Does the individual have the RFC to perform work despite limitations and are any impairments which prevent past relevant work?[3]

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   If the Commissioner carries this burden, the claimant must prove that he or she cannot perform

---

[3]   A residual functional capacity (RFC) is the most a claimant can still do despite her limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c).

the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert.   Phillips, 357 F.3d at 1239-40.   "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   Wilson v. Barnhart, 282 F.3d at 1227.   *See* Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).   The ALJ is not required, however, to include findings in the hypothetical that the ALJ has properly rejected as unsupported.   *See* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987).

## III.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through September 30, 2012."   R. 58.

2. "The claimant has not engaged in substantial gainful activity since November 28, 2008, the alleged onset date."   *Id.*

3. "The claimant has the following severe impairments: asthma, degenerative disc disease, bipolar disorder and schizophrenia."   *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   R. 59.   The ALJ found that Plaintiff had *mild* restrictions in activities of daily living; *moderate* difficulties in social functioning; *moderate* difficulties with regard to concentration, persistence or pace; and *no* episodes of decompensation, each of extended duration.   R. 59-60.

5. "[T]he claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes and scaffolds; and only occasional[ly] climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch or crawl and would require a hand-held assistive device only for uneven terrain or prolonged ambulation. The claimant would need to avoid concentrated exposure wetness and humidity, excessive vibration and other environmental irritants. The claimant would need to avoid concentrated use of heavy moving machinery and concentrated exposure to unprotected heights. Lastly, the claimant would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions. The claimant is able to interact appropriately with supervisors and coworkers in a routine work setting and respond to the usual work situations and to changes in a routine work setting." R. 60-61.

6. "The claimant is unable to perform any past relevant work." R. 65.

7. "The claimant was born on September 6, 1969 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date." *Id.*

8. "The claimant has a limited education and is able to communicate in English." *Id.*

9. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" including representative occupations such as machine monitor with 600 positions available regionally and 50,000 positions available nationally; a range of clerical work with 5,000 positions available regionally and over 100,000 positions available nationally; and production inspector with 1,200 positions available regionally and 75,000 positions available nationally. R. 66. Each of these jobs has an SVP of 2, and are unskilled, and sedentary work.[4] R. 45.

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). An SVP of 1 or 2 corresponds to unskilled work. Social Security Ruling (SSR) 00-4p (Dec. 4, 2000). An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." Dictionary of Occupational Titles (DOT) (4th Ed. Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "Unskilled sedentary work also involves other activities, classified as 'nonexertional' such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions. SSR 96-9p (July 2, 1996). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

10. The claimant has not been under a disability from November 28, 2008, through the date of the ALJ's decision.  R. 66.

## IV.  The ALJ's Consideration of the Medical and Other Evidence

Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing.  *See* Doc. 22. Plaintiff argues that the ALJ erred when he did not adopt the answer to one of several hypothetical questions posed by the ALJ to the vocational expert.  Doc. 22 at 1, 8-11. (The entire colloquy between the ALJ and the vocational expert appears below.)  The issue pertains to whether Plaintiff could perform certain work functions with limited allowable breaks when performing jobs in the regional and national economy during an eight-hour day, a step five inquiry, based on her mental abilities.  R. 43-46.

In her memorandum, Plaintiff refers to a portion of a psychological evaluation performed by Janet K. Humphreys, Ph.D., on December 9, 2009, R. 346-47; and one common finding in the mental RFC assessments completed by non-examining psychologists Jane Cormier, Ph.D., on July 29, 2010, R. 575-92, *see* Exhibit 16F at 2, and Alan Harris, Ph.D., on November 14, 2010, R. 831-48.[5]  Doc. 22 at 5-7.

---

Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[5]  On September 25, 2013, Plaintiff filed a motion requesting the Commissioner to supplement the record with the mental RFC assessments that were completed in January or February 1010.  Doc. 15.  The motion was granted.  Doc. 16.  Dr. Harris' January 14, 2010, assessments were provided the Court in a supplemental certification dated November 7, 2013, because they were not included in the original certified administrative record.  Docs. 21; R. 831-48.  The supplemental record also includes a physical RFC assessment completed by Anita Jackson, a single decisionmaker, on February 18, 2010.

Regarding Plaintiff's ability for sustained concentration, Drs. Cormier and Harris

opined (using a check-mark-like format) that Plaintiff was moderately limited in her

"[a]bility to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods."   R. 576, 832.   Dr. Cormier provided

additional remarks under her functional capacity assessment, section III:

> Claimant with evidence of mood d/o and history of polysubstance abuse.
>
> *However, the claimant appears capable of understanding and recalling simple and detailed instructions and of sustaining attention for at least simple tasks.*   The claimant may have difficulty accepting direction and criticism at times and her stress tolerance may be low but she appears generally capable of interacting appropriately with the public and with coworkers.   In addition, the claimant appears able to respond to changes on the work environment and to work hazards, and appears capable of making plans on an independent basis.
>
> *Overall, the claimant appears able to perform routine, repetitive tasks on a sustained and independent basis and in a socially appropriate manner as so motivated.*

R. 577 (emphasis added).   Like Dr. Cormier, Dr. Harris also provided a functional

capacity assessment, section III, and noted:

> Despite a dx of schizoaffective dis combined with ptsd, panic dis, and pers dis, she has a relatively good work hx.   She was stable for yrs on meds.   There is a hx of ptsd and psychosis from childhood. Due to loss of funding, agency where she was seen cld not [sic] longer provide services and she d/c meds and trt about 2 years ago.   She only started bk on meds one mon prior to CE.   Fg can be expected to improve with continued meds.   Shld she find a MH prof to provided coun and meds, her fg shld be able to ret to baseline, when she held gainful employment. She quit working after Pt died.   Despite current symp, she completes adls ind, and relates adeq.
>
> *Based upon MSE, she wld have difficulty maintaining CPP [concentration, persistence, and pace] for extended or complex tasks.   [T]he presence of others*

R. 849-56.   The ALJ and the parties do not refer to Ms. Jackson's assessment.

Case No. 1:13cv52-MCR/CAS

*cld be distracting. However, she is able to pay bills, shop, follow instruc, and read.*

Due to suspiciousness, she wld struggle to work with the public. However, she can shop and attend church.

She may still need asst with effective goal setting and planning.

R. 833 (emphasis added).

Drs. Cormier and Harris also completed separate Psychiatric Review Techniques (PRT) and, relevant here, opined that Plaintiff was *moderately* limited in maintaining concentration, persistence, or pace, R. 589, 845. Both psychologists provided consultant's notes. R. 591, 847. The ALJ did not refer to Dr. Cormier's assessments even though they were before him. *See* R. 71 (Exhibits 16F and 17F). It appears that Dr. Harris's assessments, R. 831-48, were not before the ALJ. *See, e.g.*, R. 68-72; *see also* doc. 15. Neither party mentions the latter two points.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's allegations of disability, which included her hearing testimony. R. 61. The ALJ considered Plaintiff's complaints of back pain that originally stemmed from a herniated disc in 2004. R. 61-62. The ALJ traced Plaintiff's care and treatment at Shands Clinic in 2009 and North Florida Regional Medical Center in 2010. R. 62. Plaintiff's participation in physical therapy and reference to a pain management clinic in 2009 and 2010 and referral to Shands Clinic in 2010 were noted. Physical therapy and anti-inflammatories with muscle relaxants were again recommended during this period. One physician "discussed a possible fibromyalgia diagnosis" with Plaintiff. *Id.*

The ALJ also discussed Plaintiff's asthma. The ALJ noted that "[t]he record shows a few medical visits for asthma; however, the record shows the claimant's asthma is stable on Albuterol (Exhibit 14F)." *Id.*

The ALJ then discussed Plaintiff's mental status:

The record supports the claimant's bipolar disorder and schizophrenia, which has been variously diagnosed as posttraumatic stress disorder, multiple personality disorder, manic depressive disorder and depressive disorder with psychotic features; however, the record does not demonstrate limitations consistent with the claimant's allegations. The claimant reported that she was first diagnosed with schizophrenia when she was 23 years old. She stated that she did not receive any treatment or medication until 2004 when she was started on Lexapro and Seroquel. The record shows the claimant received extensive mental health treatment from November 2003 through June 2010 with more than one service provider but primarily with Meridian Behavioral Healthcare, Inc. She alleged symptoms including panic attacks, insomnia, anxious mood, auditory hallucinations and suicide attempts. Regarding the claimant's treatment history, the record shows several no shows for counseling and medication management between June 2005 through November 2005. The record further shows that the claimant has not always been compliant with her medication partly because she could not afford them. In October 2010, she reported constant depressed mood, difficulty trusting anyone and poor eating habits. In August 2010, the record shows that Zoloft and Xanax were added to the claimant's medication regimen. The claimant testified at the hearing that she currently receives treatment from Dr. Santiago at Meridian Behavioral Healthcare once a month, for 15 to 20 minutes each session (Exhibits 13F, 14F, 15F, 19F, 20F, 21F) [R. 29-33, 458-574, 598-616].

On December 9, 2009, the claimant underwent a consultative examination with Janet Humphreys, Ph.D. [R. 345-47]. The claimant reported that she has heard voices telling her to do bad things since the age of 11. She also reported that she suffers from panic attacks, which are accompanied by trembling, vomiting, and occasional vomiting. She reported difficulty with memory but she reported that she attends church regularly and participates in Bible study classes. On mental status examination, the claimant was cooperative and seemed to be a good historian. Although her mood was irritable and depressed, her thought processes were logical and goal oriented. She did admit to having occasional hallucinations and some passive suicide ideation but when questioned about what she would do in certain scenarios, her judgment and insight were good. The claimant's remote memory was intact but she demonstrated some impairment with immediate memory. Her ability to calculate was impaired, as she was unable to perform

mental addition of double-digit numbers and her ability to think abstractly was also impaired.   The claimant was diagnosed with schizoaffective disorder, bipolar type, panic disorder without agoraphobia and chronic posttraumatic stress disorder. Dr. Humphreys opined that the claimant's ability to carry out complex instructions may be impaired by poor concentration and memory skills.   She further opined that the claimant's judgment and social skills may be negatively impacted by her psychosis (Exhibit 6F).

Dr. Eftim Adhami also performed a consultative examination on January 30, 2010 [R. 352-57].   He found the claimant's mental status demonstrated normal mood, judgment, understanding and expression.   He diagnosed the claimant with a history of bipolar disorder and schizophrenia, largely based on the claimants report.   He recommended the claimant receive a mental evaluation (Exhibit 7F).

Regarding the claimant's credibility, the record indicates that the claimant's allegations of pain are inconsistent with the objective medical evidence.   X-rays and MRIs have confirmed some degenerative changes but there has been no evidence of nerve root compression, motor loss, or sensory or reflex loss.   She did evidence a positive straight leg test result on the left supine side seated at 40 degrees; she did not evidence any lumbar muscle spasm or any other positive finding.   Additionally, although the claimant testified that she hears voices, has multiple personalities, daily crying spells and has a hard time being around people, she still finds time and the inclination to be a minister at church. However, she explained that she can only stay at church for two hours at the most.   Considering the claimant's allegations of pain against the objective medical evidence, including her reported activities of daily living, I find her allegations to be inconsistent with the medical evidence and therefore do little to bolster her credibility (Exhibits 2E and 5E).

Dr. Humphreys opined that the claimant's ability to carry out complex instructions may be impaired by poor concentration and memory skills.   She further opined that the claimant's judgment and social skills may be negatively impacted by her psychosis (Exhibit 6F).   Dr. Diana Santiago opined in a medical source statement dated September 30, 2011, rated that the claimant has no ability to function in a number of work related mental activities such as maintaining attention and concentration, maintaining socially appropriate behavior and ability to complete a normal workday/workweek (Exhibit 30F) [R. 795-96].   Both opinions are given little weight because they appear to be exaggerations of the claimant's mental functional capacity and not fully supported by the weight of the record.[6]

---

[6]   Dr. Santiago completed a medical source statement of Plaintiff's ability to do work-related mental activities on September 30, 2011.   R. 795-96.   Dr. Santiago rated Plaintiff either fair or poor in categories relating to Plaintiff's ability to understand, remember, and carry out instructions affected by her impairment.   *Id.*   In part, Plaintiff

R. 62-63.   The ALJ also discussed Plaintiff's physical status.

> DDS medical consultant, Thomas Renny, D.O. opined on June 9, 2010 in a
> physical residual functional capacity assessment that the claimant is capable of
> work at a light exertion level but would only frequently be able to climb ramps and
> stairs; balance; stoop; kneel; crouch and crawl, and never climb ladders, ropes and
> scaffolds.   Moreover, he opined the claimant should avoid concentrated exposure
> to extreme cold and heat, humidity, and fumes, odors, dusts, gases, poor
> ventilation, etc. (Exhibit 12F) [R. 449-56].

> Regarding the claimant's physical functional capacity, Dr. Robert Cook, with
> Shands Internal Medicine Clinic opined that the claimant would be unable to work
> either standing or sitting up.   He further opined that the claimant was unable to
> work at all (Exhibit 27F) [R. 768].   Dr. Cook's opinion that the claimant is unable to
> work either standing or sitting is given little weight because he does not support his
> opinion with any medical evidence.   In fact, he simply supports his opinion that the
> claimant cannot work either standing or sitting by noting her pain.
> Dr. Cook's opinion that the claimant is unable to work at all is given no weight
> because the ultimate issue of disability is reserved to the Commissioner (20 C.F.R.
> §§ 404.1527(e) and 416.927(e) and Social Security Ruling 96-2p).   A statement
> by a medical source that the claimant is "disabled" or "unable to work" does not
> mean that the such claimant will be determined to be disabled as that term is
> defined in the Act (20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1) and Social
> Security Ruling 96-2p).

> Dr. Vallurupalli [sic] [Dr. V. Anusha] opined in a medical source statement dated
> September 28, 2011 that the claimant is unable [sic] [able] to occasionally and or
> frequently lift or carry less than 10 pounds.   He found the claimant can stand or

---

was rated fair in her ability to understand and remember short, simple instructions; carry
out short, simple instructions; make simple work-related decisions; and perform at a
consistent pace.   R. 795.   She was rated poor in several areas including her ability to
maintain attention and concentration for extended periods and her ability to complete a
normal workday or workweek.   R. 795-96.   Overall, Dr. Santiago opined that Plaintiff
was incapable of holding a job due to side effects of medications and mental illness.   R.
796.   There are numerous other treatment notes in the record from Dr. Santiago and
others.   *See, e.g.*, R. 540-42, 600-16 (from June 9, 2010, through July 20, 2011).
Generally, it is noted that Plaintiff is reported as competent, appearance good, manner
appropriate, normal speech, and normal motor behavior; mood is described over time as
anxious, sad, in pain, and depressed; affect is described over time as anxious or
dysphoric; thought process is described as organized, circumstantial, or linear; no
hallucinations or suicidal ideations were noted; insight and judgment were fair; and
diagnoses are noted, including sad, bipolar type.   *Id.*

walk at least 2 hours in an 8-hour workday, can sit for less than 6 hours in an
8-hour workday and is limited in upper and lower extremities.   Additionally,
Dr. Anusha found the claimant should limit her exposure to dust, vibration,
humidity/wetness, hazards, fumes, odors, chemicals and gases (Exhibit 29F)
[R. 791-93].   I give some weight to this opinion because I have noted some
limitation in the claimant's ability to lift and carry, and have restricted her overall
exertion level to light.   I have also limited the claimant exposure to environmental
irritants taking into account any symptoms that may arise from her asthma.

R. 64.

At step four, the ALJ determined that Plaintiff could not perform any past relevant

work based, in part, on the vocational expert's testimony.   R. 42-46, 65.   These past

jobs included work as a certified nurse's assistant, which the DOT considers a

semi-skilled position at a medium exertion level; fast food cook, considered by DOT as

skilled work at a medium exertion level; and fast food cashier, considered by DOT as

unskilled work at a light exertion level.   *Id.*   "The vocational expert further testified that

an individual having the claimant's [RFC] would be unable to return to these positions."

*Id.*   The ALJ compared Plaintiff's RFC with the physical and mental demands of this

work, and found that Plaintiff was "unable to perform past relevant work, as it is actually

and generally performed."   *Id.*

At step five, the ALJ determined that Plaintiff had the RFC to perform several jobs

such as machine monitor, a range of clerical work, and production inspector.

R. 66.   The ALJ's determination was based, in part, on testimony from the vocational

expert.   R. 42-46, 66.

During the hearing, the ALJ asked the vocational expert several hypothetical

questions and the following colloquy transpired:

Q   Please testify as to the claimant's past work history?

A   Your Honor, the past work as a CNA is listed in the DOT as 355.674-014.   This is classified as a medium, semi-skilled position, with an SVP of 4.   The DOT, Your Honor, indicates this is a medium classification; however, the work is commonly recognized as being at a minimum of medium up to heavy, depending upon tasks. Since the DOT evaluated this-the Department of Labor evaluated this position in'89, additional duties have been placed within this category, requiring the worker to be able to lift and handle patient care, practically independently, which would require lifting in excess of the medium classification.   Your Honor, also in the work history, fast food cook and cashier.   The fast food cook aspects of the work, 313.374-014, is listed as medium and skilled, with an SVP of 5.   The cashier aspects of the fast food work is listed singularly, as 311.472-010.   This is listed as light and unskilled, with an SVP of 2.   Your Honor, this concludes the work history that was available to me for review.

Q   Okay, if you could please consider the following hypothetical questions.   First, if you can consider an individual with the same age, education, and work experience as claimant.   This individual would be able to perform *light work*, as defined in our Regulations, never climb ladders, ropes or scaffolds, only occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl. This individual would require a hand-held assistive device only for uneven terrain or prolonged ambulation.   This individual would need to avoid concentrated exposure to wetness and humidity, concentrated exposure to excessive vibration, concentrated exposure to environmental irritants, concentrated use of heavy, moving machinery, and concentrated exposure to unprotected heights.   This individual would be able to understand, remember, and carry out simple instructions, make judgments on simple, work-related decisions, interact appropriately with supervisors and co-workers in a routine work setting, and respond to usual work situations and changes in a routine work setting.   Based on this hypothetical question, would this individual be able to perform any of claimant's past work? [first hypothetical]

A   No, sir.

Q   Are you able to identify any other occupations in the national or regional economy such an individual would be able to perform?

A   *Your Honor, considering all the factors listed in the hypothetical, I can identify some sedentary work that appears to be applicable.*

Q   All right.   But nothing at the light level?

A   Your Honor, using a-requiring an assistive device for ambulation, even using it for prolonged ambulation, considering the other limitations, [INAUDIBLE],

environmental, and nonexertional limitations set forth in the hypothetical, *I really would not have suggestions that you might consider to be significant in numbers. But I do, at sedentary.*

Q   Okay.

A   *Shall I proceed to sedentary, sir?*

Q   Sure.

A   Thank you, sir.   Your Honor, consistent with this profile, such a person could perform work as a machine monitor.   This is referenced by DOT 689.585-018.   This is an unskilled position with an SVP of 2.   In the region, which covers data from the State of Florida, at least 600 positions, and on a national level, at least 50,000.   Another possibility at the sedentary level would be a range of unskilled clerical work, referenced by DOT 209.587-010.   This is unskilled, with an SVP of 2.   And in the region, at least 5,000 positions, and nationally, over 100,000.   A third possibility at the sedentary level would be production inspector, represented by DOT 521.687-086.   This is an unskilled position, with an SVP of 2.   And in the region, at least 1,200 such positions; nationally, at least 75,000.

Q   For the next hypothetical [second], if you could reduce the [INAUDIBLE] exertional level to sedentary, if this was the case, would this change the occupations that you enumerated in the first hypothetical?

A   No, Your Honor.

Q   For the next hypothetical, if this hypothetical individual would not consistently be able to adapt to even routine changes in a routine work setting on a consistent basis, would this change the availability of other positions?

A   Yes, Your Honor.   Under those circumstances, there is no work such a person, in my opinion, could maintain or sustain in a competitive work setting.

Q   *All right, going back to hypothetical two, if I were to add separately that if this individual was off task for 15 percent of the workday, in addition to normal work breaks, would this preclude all work?*

A   *Yes, sir.*

ALJ:   Counsel, any questions for the vocational expert?

ATTY:   No, sir.

R. 42-46 (emphasis added).

## V.  Legal Analysis

**Substantial evidence supports the ALJ's determination at step five that Plaintiff can perform several unskilled, sedentary jobs in the regional and national economy despite moderate difficulties with regard to concentration, persistence, or pace.**

At step four, Plaintiff carried her burden to prove that she could not perform prior relevant work and the ALJ so found.   R. 65.   The burden then shifted, and the Commissioner is required at step five to establish that despite Plaintiff's impairments, Plaintiff is able to perform other work in the regional and national economy in light of Plaintiff's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones, 190 F.3d at 1229; Chester, 792 F.2d at 131; MacGregor, 786 F.2d at 1052; 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   If the Commissioner carries this burden, the claimant then must prove that she cannot perform the work suggested by the Commissioner.   Hale, 831 F.2d at 1011.   Substantial evidence supports the ALJ's, and necessarily the Commissioner's determination, that Plaintiff could perform one or more sedentary, unskilled jobs in the regional and national economy.

Plaintiff does not challenge the weight the ALJ assigned to the evidence and necessarily the opinion of Dr. Humphreys.   The ALJ did not expressly mention, however, the opinion of Dr. Cormier, Exhibits 16F and 17F, and her opinion that Plaintiff was *moderately* limited in concentration, persistence, or pace, and, in particular, that Plaintiff as moderately limited in her ability to complete a normal workday and workweek without interruptions and to perform without an unreasonable number and length of rest periods. R. 575.   Dr. Harris reached the same conclusion, R. 832, although his assessments were

apparently not before the ALJ.[7]   R. 831-48.

Both consultants also provided functional capacity assessments in narrative form,

which served to explain their earlier check-mark assessments.   R. 577, 833.   According

to the Program Operations Manual System (POMS), an internal SSA document,

> [t]he purpose of section I ("Summary Conclusion") on the SSA-4734-F-SUP is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis.   **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of form SSA-4734-F4-Sup **that adjudicators are to use as the assessment of RFC**.   Adjudicators must take the RFC Assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work.   This must be done carefully using the adjudicator's informed professional judgment.

SSA POMS, § DI 25020.010B.1 (Sept. 14, 2012).[8]

Dr. Cormier noted that Plaintiff appeared "capable of understanding and recalling

simple and detailed instructions and of sustaining attention for at least simple tasks and

further noted that Plaintiff appeared "able to perform routine, repetitive tasks on a

sustained and independent basis and in a socially appropriate manner as so motivated."

R. 577.   Dr. Harris noted that Plaintiff would have difficulty maintaining concentration

persistence or pace for extended or complex tasks.   R. 833.

---

[7]   An ALJ can assign great weight to State agency physician opinions where the expert opinions are supported by and consistent with the record as a whole.   Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 850-51 (11th Cir. 2006) (unpublished); 20 C.F.R. § 404.1527(e)(2)(i) (explaining that State agency medical and psychological consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluations).

[8]   "The POMS does not have the force of law, but it is persuasive authority." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

The ALJ determined that Plaintiff had the RFC to perform light work with exceptions and further noted that Plaintiff "would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions" and "to respond to the usual work situations and to changes in a routine work setting." R. 60-61. With the assistance of the vocational expert, the ALJ determined that Plaintiff could not perform any past relevant work, which ranged from a certified nurse's assistant, a semi-skilled job at a medium up to heavy exertion level; a fast food cook, which is skilled work at a medium exertion level; to a fast food cashier, which is considered unskilled work at a light exertion level. R. 65. The vocational expert opined that Plaintiff could not perform any of these jobs given Plaintiff's RFC and the ALJ agreed.[9]  *Id.*

At step five, the ALJ determined that Plaintiff's "ability to perform all or substantially all of the requirements of [a full range of light work] has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base," the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." R. 66. The vocational expert considered these factors, R. 45, and opined that such an individual, like Plaintiff, could perform several jobs at the sedentary exertion level, but more physical in nature. *Id.* As noted by the ALJ, "[t]his is primarily because the limitation of the use of a hand-held assistive device for prolonged ambulation limits work available, which would be considered significant in numbers." *Id.*

---

[9]  The vocational expert is a specialist in employment and vocational factors influencing employment. *See* Phillips, 357 F.3d at 1240.

Notwithstanding, the vocational expert also opined that a person with essentially Plaintiff's RFC could not perform the enumerated jobs at even the sedentary level if she was off task for 15 percent of the workday, in addition to normal work breaks.  R. 46. The vocational expert was not asked to define the parameters of normal work breaks for a person with Plaintiff's RFC and who was capable of performing sedentary, unskilled jobs.[10]

As noted by the Commissioner, the ALJ is not required to include all limitations as alleged by Plaintiff, but only those that he found were credibly supported by the record.  Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 95 (11th Cir. 2009) (unpublished) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)).  Here, the ALJ included limitations in a hypothetical question posed to the vocational expert, but implicitly rejected the answer because he evidently concluded that the evidence did not support Plaintiff's need to take more breaks than normal.  The ALJ refers to evidence, including Dr. Humphreys' evaluation and the medical source statement of Dr. Santiago, but gives their assessments of Plaintiff's abilities "little weight."  R. 64.  The ALJ did not mention Dr. Cormier's mental RFC assessment, which is in the record, R. 71, 575-92, nor did he necessarily consider Dr. Harris's mental RFC assessment because it appears that it was not in the record before the ALJ.  See R. 68-72.  Both assessments, however, do not persuasively

---

[10]    In other cases not cited by the parties, vocational experts have opined that normal breaks would include two fifteen-minute breaks as well as either a thirty minute or one-hour lunch break.  See, e.g., Harris v. Astrue, Civil Action No. 2:12-CV-00541-KOB-S, 2013 U.S. Dist. LEXIS 137419, at *13 (N.D. Ala. Sept. 24, 2013); Hart v. Astrue, Case No. CV-12-S-1060-S, 2013 U.S. Dist. LEXIS 17126, at *12-14 (N.D. Ala. Feb. 8, 2013).

support Plaintiff's assertion that she needs more than normal breaks in order to complete an eight-hour workday when performing the sedentary, unskilled jobs identified by the vocational expert in light of the ALJ's RFC assessment, which provided, in part, that Plaintiff "would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions." R. 60.[11]

The ALJ did not err in determining that Plaintiff would be able to perform several sedentary, unskilled jobs without needing additional breaks during the workday. As a result, the ALJ did not err when he determined that Plaintiff retained the ability to perform other work in the regional and national economy. The ALJ's decision is supported by substantial evidence and he appropriately applied controlling law.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits should be **AFFIRMED** and judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 12, 2014.


s/   Charles A. Stampelos
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE

---

[11]   Dr. Humphreys' opinion regarding Plaintiff's ability to do work related activities is not to the contrary. R. 347 ("Plaintiff's "concentration and memory appeared impaired, and may impact her ability to carry out *complex instructions*. Her social skills and judgment appeared to be affected by her psychosis." (emphasis added)).

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**